UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| JOSE BARRAZA-VIDAL,<br><br>Petitioner,<br><br>v.<br><br>UNITED STATES OF AMERICA,<br><br>Respondent. | Case No. C10-1981-JLR-JPD<br>CR08-308-JLR<br><br>REPORT AND RECOMMENDATION |

I.   INTRODUCTION AND SUMMARY CONCLUSION

Petitioner, a federal inmate proceeding *pro se*, has filed a 28 U.S.C. § 2255 motion seeking to correct, vacate or set aside the 240-month sentence imposed by the Court following petitioner's February 2009 guilty plea to one count of conspiracy to distribute methamphetamine and cocaine. Dkt. 1.[1] Respondent United States of America has filed a response opposing the motion, Dkt. 8, to which petitioner has replied, Dkt. 12. After careful consideration of the motion, all briefs in support and opposition thereto, the governing law and the balance of the record, the Court recommends that the motion be DENIED and this case be

---

[1] "Dkt." refers to docket entries in the instant case. "CR Dkt." refers to docket entries in petitioner's underlying criminal conviction, CR08-308-JLR.

REPORT AND RECOMMENDATION
PAGE - 1

DISMISSED with prejudice.

## II. FACTS AND PROCEDURAL HISTORY

A. Petitioner's Criminal Case

Federal agents arrested petitioner and six other individuals at the conclusion of an 18-month investigation that involved the interception of several telephones. Specifically, agents used the assistance of several confidential sources to conduct approximately twelve controlled purchases of cocaine and methamphetamine from individuals believed to be distributing kilogram quantities of cocaine and pound quantities of methamphetamine in the greater Seattle area. PSR ¶ 24.[2] During each controlled purchase, law enforcement contacted the supplier using the telephone number provided by the confidential source, and the supplier sent a runner to deliver the narcotics. Law enforcement then began intercepting telephones used by the suppliers to identify the individuals involved in the distribution network.

In July and August 2008, law enforcement intercepted three telephones used by petitioner and other individuals to facilitate the distribution of drugs. During this period, law enforcement intercepted over 1,000 calls which involved the petitioner discussing drug trafficking activity. These calls revealed that petitioner and his brother Ignacio Pena-Garcia were recruiting individuals in Mexico as runners for the network, and smuggling these individuals across the border into the United States. PSR ¶ 35-36. In addition, these calls revealed that petitioner had structured the electronic wiring of drug proceeds to numerous individuals in Mexico to avoid detection by law enforcement. PSR ¶ 33. Agents arrested petitioner during a traffic stop on September 8, 2008. PSR ¶ 42. A subsequent search of petitioner's residence revealed $85,520 hidden in air ducts, as well as an electronic scale. PSR ¶ 44.

---

[2] "PSR" refers by paragraph number to the sealed Presentence Report of Jose Barraza-Vidal. *See* Dkt. 8, Ex. 3.

1    On September 11, 2008, the grand jury returned an indictment charging petitioner with
2 conspiracy to distribute methamphetamine and cocaine. CR Dkt. 1. On February 18, 2009,
3 petitioner entered into a plea agreement with the government in which he admitted to
4 knowingly and intentionally conspiring to distribute methamphetamine and cocaine. CR Dkt.
5 79. Specifically, petitioner stipulated that he was personally involved with the distribution of
6 3.857 kilograms of actual methamphetamine and 14.75 kilograms of cocaine. *Id*. at 5. In the
7 agreement, petitioner waived his right to appeal so long as the district court imposed a
8 sentence within or below the Sentencing Guidelines range as determined by the Court. *Id*. at
9 7. Additionally, petitioner waived his right to collaterally challenge the conviction and
10 sentence, except as it may relate to the effectiveness of counsel. *Id.*

11    B.    Petitioner's Guilty Plea and Sentence

12    On February 18, 2009, petitioner appeared before the undersigned and entered a guilty
13 plea to count 1 of the indictment, conspiracy to distribute methamphetamine and cocaine in
14 violation of 21 U.S.C. §§ 841(a)(1), 841 (b)(1)(A). CR Dkt. 158 at 16. On May 26, 2009,
15 petitioner appeared before the Honorable James L. Robart for sentencing. CR Dkt. 154 at 3.
16 During both hearings, petitioner was represented by his retained defense counsel, Robert
17 Meyers. CR Dkt. 158 at 2; CR Dkt. 154 at 2.

18    At the outset of the sentencing hearing, Judge Robart explained his preliminary
19 calculation of petitioner's offense level and criminal history category. *Id.* at 3. Specifically,
20 the Court "started with a base offense level of 38, a two-level enhancement for organizer, a
21 three-level reduction for acceptance [of responsibility], which gives rise to a total offense level
22 of 37," as well as a criminal history category of I and a standard range sentence of 210 to 262
23 months in prison. *Id.* at 3, 9. The Court noted that his preliminary calculation was consistent
24 with the stipulated calculations of the parties, but varied from the recommendation of the U.S.
25 Probation Office, which started with a "base level of 38 but then adds a four-level
26 enhancement and does not give an acceptance of responsibility . . . which would give rise to a

REPORT AND RECOMMENDATION
PAGE - 3

1  higher total offense level." *Id*.  In other words, the U.S. Probation Office recommended that
2  petitioner receive a four level upward adjustment for his leadership in the offense, rather than
3  a two level upward adjustment pursuant to U.S.S.G. § 3B1.1(a), as recommended by the
4  parties.  PSR ¶ 58.  Additionally, the U.S. Probation Office concluded that petitioner was not
5  entitled to a downward adjustment for acceptance of responsibility pursuant to U.S.S.G. §
6  3E1.1, because petitioner was untruthful during his presentence interview.  PSR ¶ 48-53.
7        During the sentencing hearing, defense counsel "agree[d] with [Judge Robart's
8  preliminary] calculation of the offense level.  In fact, that is what the parties anticipated in the
9  plea agreement . . . that starts us with a sentencing range of 210 to 262 months, as [defense
10 counsel] outlined in [the] sentencing memorandum."  CR Dkt. 154 at 3.  However, defense
11 counsel also asked the Court to consider "all the circumstances.  Mr. Barraza-Vidal's
12 participation level [as a mid-level manager], the fact that he was receiving directions from
13 another, and impose the mandatory minimum sentence of 121 months.  That would be a
14 substantial downward deviation, which the court is allowed to do" pursuant to 18 U.S.C. §
15 3553(a).  *Id*. at 5.  In response to the Court's question regarding what effect, if any,
16 petitioner's apparent "lack of candor in . . . discussions with probation" should have on his
17 sentence, defense counsel conceded that "there was some lack of candor, Your Honor.  I think
18 there was also some not only cultural communication problem, not just a linguistic
19 communication problem . . . I understand there are some inconsistencies. . . [but] the
20 overriding concern, I believe, is that Barraza-Vidal has accepted responsibility, has outlined
21 that he is responsible, has pled guilty to this offense . . . I think that Your Honor can
22 understand that the inconsistencies may have some other basis than intentional deceit on
23 behalf of my client, particularly given the fact he has accepted responsibility." *Id*. at 6-7.  In
24 contrast, the government recommended the Court impose a sentence of "240 months and all
25 the other terms and conditions as recommended by the probation office."  *Id*. at 9.
26

1    Judge Robart commented that petitioner's lack of candor with the U.S. Probation
2 Office "puts in serious question the acceptance of responsibility in this matter; however, I am
3 going to give the defendant that break in sentencing." *Id*. at 11-12.  Accordingly, Judge
4 Robart adopted the government's recommendation, which included a downward adjustment
5 for acceptance of responsibility, and sentenced petitioner to 240 months imprisonment. *Id*. at
6 12.  The Court also ordered that upon petitioner's release from prison, he "shall serve a five-
7 year term of supervised release, subject to the standard conditions as well as the special
8 conditions that are set forth herein." *Id*.

9    C.    Direct and Collateral Review

10    On June 5, 2009, petitioner timely filed a notice of appeal of his sentence to the Ninth
11 Circuit Court of Appeals.  CR Dkt. 120.  On January 22, 2010, the Ninth Circuit granted
12 petitioner's voluntary dismissal of his appeal, and affirmed his conviction and sentence.  CR
13 Dkt. 171.  Petitioner filed the instant § 2255 motion for a writ of habeas corpus on December
14 8, 2010.  Dkt. 1; CR Dkt. 174.

15                III.    DISCUSSION

16    In his motion for habeas relief, petitioner alleges that his counsel rendered ineffective
17 assistance by (1) failing to advise petitioner of the importance of cooperating with law
18 enforcement in order to obtain a more favorable plea bargain, and (2) failing to schedule a
19 meeting with the government for petitioner to provide a proffer statement.  Dkt. 1 at 4.
20 Petitioner asserts that he relied on his counsel "to promptly schedule and follow through with
21 any required debriefings that would have the ultimate effect of lowering his sentence,"
22 including a reduction to his sentence via a "safety-valve adjustment." *Id*.  Finally, petitioner
23 argues that he is entitled to an evidentiary hearing on his ineffective assistance of counsel
24 claim.  Dkt. 12 at 4.

25
26

A.   <u>Petitioner's § 2255 Motion Should Be Denied</u>

   *1.   The Legal Standard*

The Sixth Amendment guarantees a criminal defendant the right to effective assistance of counsel. Claims for ineffective assistance of counsel are reviewed according to the standard announced in *Strickland v. Washington*, 466 U.S. 668, 687-90 (1984). In order to prevail on such a claim, the petitioner must establish two elements. First, he must establish that counsel's performance was deficient, i.e., that it fell below an "objective standard of reasonableness" under "prevailing professional norms." *Strickland*, 466 U.S. at 687-88. Second, the petitioner must establish that he was prejudiced by counsel's deficient performance because "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694. Failure to satisfy either prong of the *Strickland* test obviates the need to consider the other. *Rios v. Rocha*, 299 F.3d 796, 805 (9th Cir. 2002).

Considering the first prong of the *Strickland* test, the petitioner must rebut the "strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy." *Strickland*, 466 U.S. at 689 (internal quotations omitted). The test is not whether another lawyer, with the benefit of hindsight, would have acted differently, but rather, whether "counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Id.* at 687, 689; *see also Dows v. Wood*, 211 F.3d 480, 487 (9th Cir. 2000) ("Under *Strickland*, counsel's representation must be only objectively reasonable, not flawless or to the highest degree of skill.").

To meet the second *Strickland* requirement of prejudice, the petitioner must show that counsel's deficient performance prejudiced the defense. *Strickland*, 466 U.S. at 687. It is not enough that counsel's errors had "some conceivable effect on the outcome of the proceeding."

*Id.* at 693.  Rather, the petitioner must establish a "reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694.  "A reasonable probability is a probability sufficient to undermine confidence in the outcome" of the case.  *Id.*

> *2.     Petitioner Has Not Shown That Defense Counsel's Conduct Was Objectively Unreasonable Under the Circumstances*

As noted above, petitioner contends that his counsel rendered ineffective assistance by failing to advise petitioner of the importance of cooperating with law enforcement, and failing to schedule a meeting with the government for petitioner to provide a proffer statement.[3]  Dkt. 1 at 4.  Petitioner asserts that as a result of his counsel's conduct, he was denied an opportunity to receive a downward adjustment to his sentence for cooperating with authorities.  *Id*.  The government responds that although petitioner's defense counsel "contacted the government in an attempt to negotiate the case further, the government exercised its discretion and did not offer the petitioner any opportunity to proffer with government agents, and thereby receive a reduction to his sentence based on cooperation."  Dkt. 8 at 6.  The government asserts that this decision was based upon petitioner's status as "the leader of a large-scale, drug-trafficking organization warranting a substantial term of imprisonment," as well as the fact that "the government did not need the petitioner's cooperation for the prosecution of other individuals charged in the investigation."  *Id*.

---

[3] As a threshold matter, the Court notes that petitioner does not contend that he actually provided substantial assistance to the government which would entitle him to a downward reduction in his sentence.  As discussed above, the record demonstrates that petitioner was never honest and forthcoming with government authorities.  In fact, petitioner's consistent "lack of candor" with the government, including the U.S. Probation office, prompted the Court to question whether petitioner should receive a downward reduction for acceptance of responsibility in this case pursuant to 18 U.S.C. § 3553(a) during the sentencing hearing.  *See* CR Dkt. 154 at 6, 11.

REPORT AND RECOMMENDATION
PAGE - 7

Pursuant to United States Sentencing Guidelines § 5K1.1, a criminal defendant may receive a discretionary reduction to his sentence based on substantial assistance provided to authorities. Specifically, this provision provides as follows:

> Upon a motion of the government stating that the defendant has provided substantial assistance in the investigation of prosecution of another person who has committed an offense, the court may depart from the guidelines.

U.S.S.G. § 5K1.1. This section grants the government the discretion, but does not impose a duty, to move for a departure when the defendant has rendered substantial assistance. *United States v. Murphy*, 65 F.3d 758, 762 (9th Cir. 1995). *See also Wade v. United States*, 504 U.S. 181, 184-86 (holding that a district court sentencing a defender may *sua sponte* grant a downward departure if it finds the government's refusal to make the 5K1.1 motion to have been result of an "unconstitutional motive" or was not rationally related to any legitimate government interest). A defendant does not have a right to a plea offer that includes an opportunity to provide the government with substantial assistance in exchange for a commitment that the government will make a U.S.S.G. § 5K1.1 motion for downward departure at sentencing. Rather, the availability of a plea offer that includes an opportunity to cooperate with law enforcement is left to the discretion of the prosecutor. *See United States v. Moody*, 778 F.2d 1380, 1385-86 (9th Cir. 1985) ("There is no constitutional right to a plea bargain, and the decision whether to offer a plea bargain is a matter of prosecutorial discretion.").

In response to petitioner's claim that his counsel never advised him regarding the importance of cooperating with law enforcement, his former defense counsel, Mr. Meyers, testified that he "advised Mr. Barraza-Vidal that he needed to be completely honest with the U.S. Probation office when they interviewed him for the pre-sentence report. Unfortunately, it appeared that Mr. Barraza-Vidal did not follow this advice and intentionally attempted to

REPORT AND RECOMMENDATION
PAGE - 8

deceive the U.S. Probation Office." Dkt. 8, Ex. 6 at 3 (Meyers Decl.).[4] Specifically, Mr. Meyers testified that "Mr. Barraza-Vidal instructed me on numerous occasions to negotiate a plea agreement and that he would not allow [me] to take the matter to trial." *Id*. at 2. Based on this directive, Mr. Meyers entered into plea negotiations with the U.S. Attorney's Office. *See id*. Mr. Meyers testified that the government sent him a proposed plea agreement to resolve the petitioner's criminal case prior to trial, which was translated into Spanish for Mr. Barraza-Vidal on at least two occasions. *See id*. Mr. Meyers also "met with Mr. Barraza-Vidal to review the plea agreement and answer any questions he may have regarding the plea agreement. Mr. Barraza-Vidal asked me many questions which I believe I answered for him." *Id*. After discussing the proposed plea agreement with Mr. Meyers, petitioner instructed Mr. Meyers to "get him a better plea negotiation. I attempted, unsuccessfully, to fulfill Mr. Barraza-Vidal's directive." *Id*. On the date of the entry of the plea, "Mr. Barrazza-Vidal again told me that he would not take the matter to trial and that he would accept the negotiated plea." *Id*. at 3. Thus, Mr. Meyers' testimony is consistent with the government's assertion that it did not agree to provide a "better plea" for petitioner, such as by offering petitioner an opportunity to cooperate with government agents in exchange for a reduced sentence.

In his reply brief, petitioner points out that Mr. Meyers does not claim to have counseled petitioner to provide assistance to the government for the sole purpose of negotiating a more favorable plea bargain. Petitioner asserts that "[i]n counsel's declaration there is no statement to Barrazza that he needed to debrief, nor is there any statement from counsel that he went to the government and set up a debriefing." Dkt. 12 at 2. Petitioner has

---

[4] When a habeas corpus petition is based on communications between an attorney and client, the petitioner impliedly waives the attorney-client privilege as to the matters challenged. *See Bittaker v. Woodford*, 331 F.3d 715, 716 (9th Cir. 2003) (en banc). Thus, the government requested and successfully obtained a declaration from Mr. Meyers concerning his communications with petitioner related to petitioner's habeas claims. *See* Dkt. 8, Ex. 6 (Meyers Decl.).

REPORT AND RECOMMENDATION
PAGE - 9

failed, however, to demonstrate that Mr. Meyer's failure to schedule a proffer or advise petitioner regarding the same was unreasonable under the circumstances.  As argued by the government, "[a]lthough Mr. Meyers contacted the government in an attempt to negotiate the case further, the government exercised its discretion and did not offer the petitioner an opportunity to proffer with government agents, and thereby receive a reduction to his sentence based on cooperation." Dkt. 8 at 6.  Because the government did not offer the petitioner an opportunity to provide substantial assistance, Mr. Meyers did not violate the standard of professional conduct by failing to schedule a proffer which he did not have the ability or control to schedule, or by failing to explain the importance of such cooperation or assistance to petitioner.  Under these circumstances, there is no basis to conclude that Mr. Meyer's conduct constituted ineffective assistance.

> *3.     Defense Counsel's Conduct Did Not Result in Prejudice, Because Petitioner Was Ineligible for a "Safety-Valve Adjustment"*

Petitioner contends that Mr. Meyer's failure to arrange a proffer with the government constituted ineffective assistance, as "the obligation of sentencing counsel to do this comes from the requirements provided in the Safety Valve Guideline." Dkt. 1 at 4.  Additionally, petitioner alleges that if Mr. Meyers had arranged for petitioner to provide the government with substantial assistance prior to sentencing, the sentencing hearing "certainly would have resulted in a different outcome." *Id*. at 5.  The government responds that petitioner's arguments lacks merit because petitioner is simply not eligible for a safety-valve adjustment in this case. Dkt. 8 at 7.

U.S.S.G. 5C1.2(a) requires the court to impose a sentence in accordance with the applicable guidelines "without regard to any statutory minimum sentence" upon finding the defendant to have satisfied the criteria set forth in 18 U.S.C. § 3553(f)(1) to (5).  Among other requirements, the defendant must not be "an organizer, leader, manager, or supervisor of others in the offense," and "not later than the time of the sentencing hearing, the defendant

REPORT AND RECOMMENDATION
PAGE - 10

[must have] truthfully provided to the Government all information and evidence the defendant has concerning the offense or offenses that were part of the same course of conduct or of a common scheme or plan[.]" U.S.S.G. 5C1.2(a). A downward deviation in sentencing based upon a defendant's satisfaction of these criteria is commonly referred to as a "safety-valve adjustment."

Here, the Court as well as the U.S. Probation Office concluded that petitioner acted as an "organizer, leader, manager, or supervisor of others in the offense[.]" U.S.S.G. 5C1.2(a)(4). Petitioner received a two-level upward adjustment to his base offense level as a result of his leadership role within the criminal enterprise. CR Dkt. 154 at 3, 9. As discussed above, petitioner recruited accomplices, exercised control and authority over others, and extensively participated in the planning and execution of the criminal operation. *See* U.S.S.G. 3B1.1 (providing in a background note that "[f]actors the court should consider include the exercise of decision making authority, the nature of participation in the commission of the offense, the recruitment of accomplices, the claimed right to a larger share of the fruits of the crime, the degree of participation in planning or organizing the offense, the nature and scope of the illegal activity, and the degree of control and authority exercised over others."). Thus, even if petitioner had satisfied the other criteria set forth in U.S.S.G. 5C1.2(a), including "truthfully provid[ing] to the Government all information and evidence the defendant has concerning the offense or offenses," petitioner was still not eligible for a safety-valve adjustment. U.S.S.G. 5C1.2(a)(5).

Accordingly, even if Mr. Meyers had advised petitioner that he could potentially obtain a safety-valve adjustment to his sentence if he cooperated with the government, and successfully scheduled a meeting to facilitate such cooperation, petitioner would not have received a downward adjustment to his sentence pursuant to U.S.S.G. 5C1.2(a). Petitioner has therefore failed to demonstrate that but for Mr. Meyer's ineffective assistance, the outcome of his sentencing hearing would have been different.

### B.  An Evidentiary Hearing is Not Required

A petitioner is entitled to an evidentiary hearing "[u]nless the motion and files and records of the case conclusively show that the prisoner is entitled to no relief[.]"  28 U.S.C. § 2255.  In determining whether an evidentiary hearing is required, the Ninth Circuit has described the standard as whether "the movant has made specific factual allegations that, if true, state a claim on which relief could be granted."  *United States v. Schaflander*, 743 F.3d 714, 717 (9th Cir. 1984) (citing *United States v. Hearst*, 638 F.2d 1190, 1194 (9th Cir. 1980)).  Thus, a hearing must be granted unless "the movant's "allegations, when viewed against the record, do not state state a claim for relief or are so palpably incredible or patently frivolous as to warrant summary dismissal."  *Id.*  In other words, if a petitioner's allegations can be refuted from the record before the Court, an evidentiary hearing is unnecessary.  *See Miller v. United States*, 339 F.2d 704, 705 (9th Cir. 1964); *United States v. Espinoza*, 866 F.2d 1067, 1070-71 (9th Cir. 1988).

Because the record before this Court demonstrates that petitioner's right to effective assistance of counsel was not violated, an evidentiary hearing is not required in this case.   As discussed above, petitioner has not satisfied either prong of the *Strickland* test.  Mr. Meyers' failure to advise petitioner of the importance of cooperating with law enforcement or schedule a meeting with the government to provide a proffer statement was objectively reasonable for two reasons.  First, petitioner did not have an offer from the government to provide cooperation in exchange for a reduction to his sentence under the substantial assistance provisions of U.S.S.G. § 5K1.1, and therefore Mr. Meyers had no ability to schedule such a meeting.  Second, even if petitioner had disclosed to the government "all information and evidence the defendant has concerning the offense or offenses that were part of the same course of conduct or of a common scheme or plan" before the sentencing hearing, petitioner was still not eligible for a safety-valve adjustment under U.S.S.G. 5C1.2(a) because he was an "organizer, leader, manager, or supervisor of others in the offense[.]"  U.S.S.G. 5C1.2(a)(4).

As petitioner was ineligible for either of these potential sentence reductions, he cannot demonstrate that Mr. Meyers was ineffective for failing to pursue them. Petitioner also cannot show that Mr. Meyers' pursuit of these sentence reductions would have changed the outcome of the sentencing proceeding.

### C. Certificate of Appealability

A petitioner seeking post-conviction relief under 28 U.S.C. § 2255 may appeal a district court's dismissal of his § 2255 motion only after obtaining a certificate of appealability ("COA") from a district or circuit judge. A COA may issue only where a petitioner has made "a substantial showing of the denial of a constitutional right." *See* 28 U.S.C. § 2253(c)(3). A petitioner satisfies this standard "by demonstrating that jurists of reason could disagree with the district court's resolution of his constitutional claims or that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further." *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003). Under this standard, this Court concludes that petitioner is not entitled to a certificate of appealability with respect to his ineffective assistance of counsel claims.

## IV. CONCLUSION

For the foregoing reasons, this Court recommends that petitioner's § 2255 motion be DENIED and that this case be DISMISSED with prejudice. The Court also recommends that a COA not be issued. A proposed order accompanies this Report and Recommendation.

DATED this 5th day of May, 2011.

*James P. Donohue*
_____
JAMES P. DONOHUE